## ROBERTS VS. BARNES.

ESTRAYS. (1.) *Term defined.* (2.) *Rule as to notifying owner.*

1. The word "stray," or "estray," in our statutes relating to that subject (R. S. ch. 43; Laws of 1869, ch. 54), must be understood in its common law sense as denoting a wandering beast *whose owner is unknown*, at the time, to the person who takes it up.
2. The provision that "any person taking up a stray shall, within seven days thereafter, notify the owner thereof, *if to him known*," etc., must be understood as referring to a case in which the owner *becomes known* within the seven days.

APPEAL from the Circuit Court for *Racine* County.

Replevin, commenced April 30, 1867, for certain cattle, alleged to have been wrongfully taken from plaintiff's possession by defendant on the 27th of the same month. The answer was, that the cattle, on the day mentioned, strayed upon defendant's premises, and were taken up and detained by him in pursuance of the statute; that on the same day he became satisfied that they were the property of the plaintiff, and notified plaintiff that he had taken them up and detained them as estrays; that he detained, fed and took care of them about four days after they were taken up; that on the 30th of said month, plaintiff seized and took them away without his consent, in violation of the statute, without first tendering to him all or any of the lawful charges incurred by reason of the premises. Defendant therefore demands judgment for the return of the cattle, or the value thereof, with damages for the detention, etc. There was a reply in terms denying "every material allegation" of the counterclaim, and alleging, in substance, that the cattle escaped from plaintiff's to defendant's close by reason of a certain portion of the division fence between them being out of repair, and that defendant was bound to keep the same in repair.

The court refused the following instructions asked for the defendant: "1. The cattle having at the time

Roberts vs. Barnes.

alleged in the answer escaped from the premises of the plaintiff, and come upon the land of the defendant, and remained there until found by the defendant, were strays within the statute relating to strays.

" 2. The defendant, having, at the time alleged in the answer, found the cattle upon his land, and taken them up as strays, and given notice to the plaintiff thereof, with a statement and demand of the costs and charges in the premises, acquired a lien upon the cattle for his proper costs and charges, and the plaintiff had no right to take the cattle out of the defendant's possession until those costs and charges had been adjusted as provided in the statutes, and paid.

The court instructed the jury as follows:

" If you find from the evidence that, within a reasonable time after the cattle in question went upon the premises of the defendant, the servants and employees of the plaintiff, who were by him charged with the duty of looking after them, made pursuit of of the cattle for the purpose of returning them to the premises of the plaintiff, and were prevented from so doing by the defendant, who in the meantime had taken up the cattle, then the plaintiff must have a verdict.

" But if you find that the plaintiff had temporarily abandoned the control of the cattle by failing to pursue for the purpose of recovering possession of them within a reasonable time after they went upon the premises of the defendant, then the defendant must have a verdict."

Verdict for plaintiff; new trial denied; and defendant appealed from a judgment on the verdict.

*Smith & Lamb*, for appellant, contended that the language of the statutes relative to estrays (R. S. ch. 43, sec. 2; Laws of 1869, ch. 54) which requires that " any person taking up a stray shall, within seven days thereafter, notify the owner thereof, *if to him known*," plainly implies that the fact of the owner being known

when the cattle are taken up, does not prevent their being strays within the meaning of the law; and that if the cattle here in question were strays when taken up, defendant had a right to hold them until his charges were paid. *Ford v. Ford,* 3 Wis. 309; 12 id. 448; 13 id. 498; 15 id. 424, 443. For decisions as to what constitute strays, see also *Parker v. Jones,* 1 Allen, 270; *Bruce v. White,* 4 Gray, 345.

*Elbert O. Hand,* for respondent, argued that, to constitute an estray, it is necessary (1) that the owner of the animals be unknown to the finder, and (2) that the animals have wandered away and are entirely free from the control, care and custody of the owner (1 Bouvier's Law Dic. 483; 5 Kent's Comm. 9th ed. 447; 1 Blacks. Comm. 297; Jacobs' Law Dic. "Estray"); that the word must be construed in its established legal sense in the statute, there being nothing in the provisions of the statute which forbids such a construction (R. S., ch. 5, sec. 1, subdv. 1; 6 Bac. Abr. 383; 1 N. H. 555, 556; 6 Mod. 143; 4 Gilman, 205–7; 8 Iredell, 147); that the words "if to him known," apply to a case where the owner becomes known within the seven days to the person who has taken up an estray; that statutes are to be construed with reference to the objects designed to be attained and the evils to be remedied by them (10 Wis. 136; 1 Pick. 248; 6 Hill, 616; Story on Con. § 400; 1 Blacks. Comm. 60, 61); that the objects of the statute here in question were, (1) to enable the owner of lost property to regain it; (2) to provide for the preservation of the property while out of his possession, and (3) to compensate the finder for his charges and expenses in caring for and advertising the property; that it was no part of the design of the statute to provide means for punishing trespasses committed by a neighbor's cattle, for which there was a sufficient remedy by distraint or by an action for trespass; and that any construction of the statute which would be contrary

Roberts vs. Barnes.

to natural equity and justice, or productive of great practical inconvenience, should be rejected, unless the language is so plain as not to admit a different construction. *Donaldson v. Wood*, 22 Wend. 396.

Dixon, C. J.   If we take the definition of the term estray, as given by Blackstone, Kent, or any standard writer upon the common law, or as found in any of the law dictionaries, it clearly appears that the animals in question in this suit were not estrays in the common law sense of the word.   From these definitions, several of which are quoted in the brief of counsel for the plaintiff, it is shown that, to constitute an estray, the owner of the animal must be unknown, and that it must be found wandering.   By wandering we understand, free from the care, control and custody of the owner, or where no one seeks, follows or claims. Burrill, in his dictionary, gives the definition from *Fleta: "Pecus vagans, quod nullus petit, sequitur vel advocat;* a wandering beast, which no one seeks, follows or claims."   He likewise gives that by Spelman: " A beast which, having escaped from its keeper, wanders over the fields, its owner being unknown."   See also *Walters v. Glats*, 29 Iowa, 437.

Upon the uncontroverted testimony, the cattle here were not estrays when the defendant claimed to take them up as such, because the owner was not then unknown to him, unless the legal signification of the term has been changed and enlarged, or a more extended application given to it by the statute.   It is claimed that such is the effect of the statute, and that the intention of the legislature to make the term more comprehensive under it, is shown by the provision that "any person taking up a stray, shall, within seven days thereafter, notify the owner thereof, *if to him known,* and request such owner to pay all reasonable charges, and take such stray away."   R. S. ch. 43, sec. 2; Laws of 1869, ch. 54, sec. 2.   In opposi-

tion to this view, we are referred to the statutory rule of construction enacted in subd. 1, sec. 1, ch. 5, R. S., that technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. We are likewise referred to the general rule of construction adopted and acted upon by the courts, that where a word, having a well known and definite meaning at common law, is used in a statute, it shall be presumed to have been employed by the legislature in that sense, unless the contrary clearly appear. It is also said that the provision of the statute relied on was intended to prescribe seven days after taking up an estray, as the period of time in which the person taking it up may, if he can, ascertain who the owner is, before proceeding to file and post notices, or to advertise as subsequently required, and that the obvious interpretation is, that he shall notify such owner, if ascertained and known at or before the expiration of that time. These considerations seem to us decisive of the question, and to settle the construction as claimed by counsel for the plaintiff.

But the court below submitted the case to the jury merely upon the question, whether, within a reasonable time after the cattle escaped upon the premises of the defendant, the servants and employees of the plaintiff, charged by him with the duty of looking after them, made pursuit for the purpose of returning them to the premises of the plaintiff, and were prevented from so doing by the defendant, who, in the meantime, had taken up the cattle. This was giving the case to the jury on terms certainly most favorable to the defendant. It was resting it entirely on the fact whether the cattle were wandering or not, or out of the care or control of the plaintiff, and with no one in immediate or reasonably close pursuit. Upon this ground the jury found against the defendant, as

they clearly must have done upon the other, had that been submitted to them upon the law as stated in this opinion.

These views render all questions with regard to the division fence between the parties, and all points and exceptions growing out of that part of the case, wholly immaterial. Verdict and judgment must have gone against the defendant upon the grounds above stated, regardless of any rights he may have or claim, or causes of complaint which may exist, with respect to the division fence.

*By the Court.*—Judgment affirmed.

LYON, J., took no part in the decision of this appeal, having presided at the circuit when the cause was tried.